[Cite as *In re H.W.*, 2017-Ohio-7391.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF: H.W.

:        JUDGES:
:        Hon. Patricia A. Delaney, P.J.
:        Hon. William B. Hoffman, J.
:        Hon. Earle E. Wise, Jr., J.
:
:
:
:        Case No. 2016 AP 10 0050
:
:        O P I N I O N

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case No. 15 JN 00166 |
| JUDGMENT: | Affirmed in Part, Reversed in Part and Remanded |
| DATE OF JUDGMENT: | August 28, 2017 |

APPEARANCES:

| For Plaintiff-Appellee | For Appellant-Mother |
|---|---|
| JEFF M. KIGGANS<br>Tuscarawas County JFS<br>389 16th Street, S.W.<br>New Philadelphia, OH 44663 | BARABARA J. ROGACHEFSKY<br>12 East Exchange Street, 5th Floor<br>Akron, OH 44308 |
| GERRIT DENHEIJER<br>Guardian Ad Litem<br>222 W. Main Street<br>Ravenna, OH 44266 | RYAN WHITE, Pro Se<br>Father of H.W.<br>912 Ohio Street<br>Zanesville, OH 43701 |

*Wise, J.*

{¶1} Appellant-mother, Alicia Borden (Mother), appeals the trial court's grant of legal custody of H.W to H.W's father Ryan White (Father). Appellee is the Tuscarawas County Department of Job and Family Services (TDJFS).

FACTS AND PROCEDURAL HISTORY

{¶2} Mother and Father are the biological parents of H.W. H.W. lived with Mother prior to the allegations against mother in this matter, and Father was not exercising parenting time.

{¶3} This case began in May 2015 when then seven year-old H.W appeared at school with a slap mark and bruising on his face, a mark on his foot, and older bruises on his back. H.W was seen at Akron Children's Hospital where H.W's account of physical abuse by Mother was substantiated. Mother denied any abuse. Jared Giesey, who is the father of Mother's second child, X.G, took emergency custody of both H.W and X.G on May 14, 2015.

{¶4} On June 19, 2015, a shelter care hearing was held. Mother was notified of the hearing, but failed to appear. The trial court granted temporary custody of the children to their respective fathers – H.W to Father and X.G to Giesey.

{¶5} On June 22, 2015, TCJFS filed a complaint of abuse, neglect and dependency, and a proposed case plan. Mother and Father stipulated to the complaint at the adjudication held the same day, and temporary custody of H.W was continued with Father.

{¶6} The case continued with H.W in Father's custody, and with case plan services provided to both Mother and Father. Per the case plan, Father completed a psychological

assessment with Dr. Gary Wolfgang, and provided H.W with adequate basic needs, medical, dental, counseling, and educational needs for more than a year. Mother also engaged in counseling, parenting, and anger management classes as directed. In October, 2015, Mother was granted supervised visitation.

{¶7} On August 31, 2016, the matter proceeded to an evidentiary hearing pursuant to TCJFS's motion to terminate protective supervision and close the case with Father maintaining custody of H.W. On September 19, 2016, the trial court issued its judgment entry granting custody of H.W. to Father and terminating protective supervision by TCJFS.

{¶8} It is from this decision Mother now appeals. She presents four assignments of error:

I

{¶9} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT GRANTED CUSTODY TO FATHER WITHOUT A REPORT AND/OR TESTIMONY FROM THE GAL AS TO HIS INVESTIGATION, WISHES OF THE CHILD AND RECOMMENDATIONS AS TO THE CHILD'S BEST INTERESTS."

II

{¶10} "THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ADDRESS MOTHER'S RESIDUAL PARENTAL RIGHTS TO COMPANIONSHIP TIME."

III

{¶11} "THE TRIAL COURT ERRED IN NOT ENTERING FINDINGS OF FACT AS REQUIRED UNDER R.C. 2151.419(B)(1)."

IV

{¶12} "THE TRIAL COURT EXHIBITED BIAS, FAILED TO ACT AS AN IMPARTIAL ARBITER AND INTERFERED AS AN ADVOCATE DENYING THE APPELLANT A FAIR TRIAL."

I

{¶13} Mother first argues the trial court abused its discretion when it granted custody to Father without a report or testimony from the guardian ad litem (GAL) as required by Sup.R. 48. We disagree.

{¶14} As an initial matter, Mother failed to object to the lack of a GAL report. She has therefore forfeited all but plain error. Civil plain error is defined in *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099, 1997-Ohio-401, syllabus, as "error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." The *Goldfuss* court at ¶121, explained the following:

> The plain error doctrine originated as a criminal law concept. In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings.

{¶15} Sup.R. 48 sets forth appointment procedures, report requirements, and roles and responsibilities for GALs. As noted by Mother, the Rules of Superintendence do not carry the force of statutory or case law, and create no substantive rights. *Allen v. Allen*, 11th Dist. Trumbull No.2009-T-0070, 2010-Ohio-475 ¶ 31. Because Sup.R. 48 is a general guideline that does not have the force of statutory law, Mother does not have any substantive right to enforce it. *Rice v. Rice*, 5th Dist. No. 10 CA F 11 0091, 2011-Ohio-3099, ¶ 40.

{¶16} Moreover, as noted by Appellee, the GAL was present at the evidentiary hearing and questioned witnesses. Mother had every opportunity to call the GAL as a witness, but failed to do so. Further, an examination of the record does not reveal a situation wherein plain error should apply. At the evidentiary hearing, Father testified that when H.W was placed with him, H.W was a year behind in school, behind on his vaccines, and in need of $1500.00 of dental work. Father remedied each of these issues, made sure H.W has engaged in counseling through this matter and provided stable housing for H.W. Mother did not dispute any of Father's testimony. TCJFS case worker Stacia Stevens testified she met with H.W. monthly in Father's home and found nothing concerning in the home. T. at 5, 8-11, 22, 55-56.

{¶17} Dr. Wolfgang, the psychologist who conducted Fathers psychological evaluation testified that he found no evidence that Father suffered from post-traumatic stress disorder due to Father's military service in Iraq and Afghanistan – the TCJFS's main concern in placing H.W. with Father. Dr. Wolfgang further saw no "red flags" that would indicate further psychological testing was necessary. T. at 15, 37, 43-44.

{¶18} Meanwhile, while Mother complied with the TCJFS case plan, she has had three residences in one year, and her psychological evaluation concluded she requires long-term intensive anger management. Further, Mother continued to deny she had abused H.W. and externalized blame for the situation she found herself in. Indeed, during the hearing Mother alleged that the teacher who reported the abuse did so only because "I was dating a guy she liked and she wanted him." Because Mother's anger issues remain unresolved, and because her parenting skills have not been resolved to the satisfaction of the agency, Stevens recommended it was within H.W's best interest to remain with Father. T. at 63,-65, 69, 77, 78, 157.

{¶19} We find no plain error in the grant of custody to Father without a report from the GAL. The first assignment of error is overruled.

## II, III

{¶20} In her second assignment of error, Mother argues the trial court abused its discretion when it failed to address her residual parental rights to companionship time. In her third assignment of error, Mother argues the trial court erred by failing to enter findings of fact as required under R.C. 2151.419(B)(1), specifically, reasonable efforts findings.

{¶21} As to Mother's companionship time argument, TCJFS points out that the subject is raised briefly at the conclusion of the adjudicatory hearing. While this is accurate, the conversation on the record does not make clear what the companionship time arrangement is or if there is one at all. Further, reference is made to a conversation regarding companionship time that took place off the record. T. at 158-160. The subsequent judgment entry, however, is silent as to companionship time.

{¶22} As for Mother's argument regarding a lack of reasonable efforts findings, R.C. 2151.419 governs hearings on efforts of agencies to prevent removal of children from homes. Subsection (A)(1) states the following:

Except as provided in division (A)(2) of this section, at any hearing held pursuant to section 2151.28, division (E) of section 2151.31, or section 2151.314, 2151.33, or 2151.353 of the Revised Code at which the court removes a child from the child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts. If the agency removed the child from home during an emergency in which the child could not safely remain at home and the agency did not have prior contact with the child, the court is not prohibited, solely because the agency did not make reasonable efforts during the emergency to prevent the removal of the child, from determining that the agency made those reasonable efforts. In determining whether reasonable efforts were made, the child's health and safety shall be paramount.

{¶23} Subsection (B)(1) states the following:

A court that is required to make a determination as described in division (A)(1) or (2) of this section shall issue written findings of fact setting forth the reasons supporting its determination. If the court makes a written determination under division (A)(1) of this section, it shall briefly describe in the findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home.

{¶24} The trial court's findings in its September 19, 2016 adjudicatory dispositional entry, although detailed, do not "briefly describe in the findings of fact the relevant services provided by the agency to the family of the child and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home." The statute contains mandatory language, thus requiring these findings. *In re Kyle*, 5th Dist Tuscarawas No. 2008 AP 01 0002, 2008-Ohio-5892, ¶ 35, *In the Matter of B.G, P.G, & K.G,* 5th Dist. Muskingum No. CT2013–0033, 2014-Ohio-409. We therefore remand the matter for best efforts findings, and for clarification of Mother's residual parental rights to companionship time.

IV

{¶25} In her final assignment of error, Mother argues the trial court judge demonstrated bias because it 1) questioned Mother, maternal grandmother, and maternal aunt more harshly than it questioned Father; 2) because it referenced the psychological

evaluations of Mother and Giesey; and 3) because it referenced matters outside the hearing. We disagree.

{¶26} As this court noted in *State v. Johnson*, 5th Dist. Stark No. 2016CA00069, 2016-Ohio-8261¶ 39: "Pursuant to R.C. 2701.03, only the chief justice of the Supreme Court of Ohio or his or her designee has the authority to determine a claim that a common pleas court judge is biased or prejudiced." Citing *Stanley v. Ohio State Univ. Med. Ctr.,* 10th Dist. No. 12AP-999, 2013-Ohio-5140, ¶ 94. We have no jurisdiction to address Mother's claim through this appeal*.*

{¶27}  Therefore, we overrule Mother's final assignment of error.

By Wise, Earle, J.

Delaney, P.J. concur and

Hoffman, J. concurs separately.

EEW/sg 724

*Hoffman, J., concurring*

{¶28} I concur in the majority's analysis and disposition of Appellant's first, second, and third assignments of error.

{¶29} I further concur in the majority's disposition of Appellant's fourth assignment of error, but do so for a different reason.

{¶30} While I agree only the Chief Justice of the Supreme Court of Ohio or his or her designee has the authority to determine when to order the recusal of a judge, I do not believe that relieves this Court of the responsibility to review claims of bias or prejudice occurring during the trial court's hearing of the case.

{¶31} That being said, I would overrule Appellant's fourth assignment of error on the merits.

_____
HON. WILLIAM B. HOFFMAN